WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE Mortgage Electronic Registration Systems (MERS) Litigation<br>MDL 09-2119-PHX-JAT<br>_____<br><br>Milan Stejic,<br><br>      Plaintiff,<br><br>v.<br><br>Aurora Loan Services, LLC; Shelter Mortgage Co., LLC; and Mortgage Electronic Registration Systems, Inc.,<br><br>      Defendants.<br>_____ | CV 10-1547-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Milan Stejic's Motion to Reconsider Dismissal of Stejic (Doc. 1611). The Court now rules on the Motion.

**I.      BACKGROUND**

This case is part of a multi-district litigation ("MDL"), wherein Plaintiff was ordered to file a consolidated amended complaint with numerous other plaintiffs because his claims were similar to those of other plaintiffs in the MDL. On June 4, 2011, Plaintiffs filed their Consolidated Amended Master Complaint (Doc. 1424) ("CAC").

In that Complaint, Plaintiff alleged that he owned a Property located at 2015 East Barkwood Road, Phoenix, Arizona 85048 (the "Property"). (Doc. 1424 at 21 and Exhibit 51). Plaintiff alleged that Mortgage Electronic Systems, Inc. ("MERS") and/or Quality Loan Service Corporation ("QLS") recorded a Substitution of Trustee related to the Property,

which was signed by Jim Montes ("Montes") acting as "Vice-President" for MERS, Inc. (*Id.* at 21). Plaintiff alleged that Montes did not have authority to sign the Substitution of Trustee in the capacity of Vice-President for MERS, Inc. because he was not employed by MERS, Inc. or a true beneficiary under the Deed of Trust on the Property. (*Id.*). Plaintiff alleged that Montes was employed by QLS, but was not an officer of MERS, QLS, or Aurora, and none of those parties had a legal interest in the Deed of Trust on the Property. (*Id.*). Plaintiff alleged that Montes lacked any knowledge of any of the representations contained in the Substitution of Trustee. (*Id.*).

Plaintiff also alleged that the Substitution of Trustee was false because MERS, acting through a QLS employee, purported to substitute QLS as the trustee, but MERS was not the Lender. (*Id.* at 21-22). Plaintiff alleged that only the Lender could substitute the trustee, accelerate the debt, or direct the power of sale. (*Id.* at 22). Plaintiff also alleged that the Assignment was notarized in blank prior to being signed and Jim Montes did not sign the document or did not have authority to sign the document. (*Id.*). Plaintiff alleged that on January 27, 2009, QLS recorded the Notice of Sale of the Property and Substitution of Trustee signed by Jim Montes for MERS. Plaintiff further alleged that Jim Montes signed and recorded numerous Substitutions of Trustee with visibly differing signatures in the Maricopa County Recorder's Office. (*Id.*).

Plaintiff alleged that MERS authorized or directed the recording of the Notice of Trustee's sale and that the Notice listed the current beneficiary as MERS c/o Aurora Loan Services. (*Id.* at 23). Plaintiff alleged that this document was false because it did not list the true beneficiary under the Deed of Trust because it was part of a "chain of documents" based on invalid designations and identifications of the beneficial interest in the Deed of Trust for the Property. (*Id.*).

Plaintiff alleged that Quality Loan Service Corporation, with the knowledge and/or at the direction of Defendant Aurora Loan Services, caused the Trustee's Deed upon Sale to be recorded. (*Id.*). Plaintiff alleged that the Deed was signed by Karla Sanchez, "a robosigner employee of QLS." (*Id.* at 24). Plaintiff alleged that Karla Sanchez signed and

recorded over one hundred Trustee's Deeds Upon Sale in the Maricopa County Recorder's Office, and, in many of them, the signatures appear very different. (*Id.* at 24). Plaintiff alleged that the assertions contained in the Deed that Aurora paid for the property at the sale and that Aurora is the foreclosing beneficiary are false because the beneficiary was MERS. (*Id.*). Plaintiff also alleged that the information in the document was false because it ignored the securitization that occurred in 2007. (*Id.*).

Plaintiff alleged that, as a result of the above allegations, Defendants "knew or had reason to know that the documents were 'robosigned' (or forged), contained false claims, or were otherwise invalid based on MERS's status as making the assignments as 'beneficiary' when it had no beneficial interest in the deed of trust subject to the assignment, was not the Lender, was not the party to whom the money was owed, and it had no interest in the notes secured by the deed of trust, and therefore constitute a violation of A.R.S. 33-420(A)." (*Id.* at 25).

Plaintiff alleged that he did not know or have reason to know that the documents listed were false until consultation with counsel and investigations into "robosigners." (*Id.*).

As relief, Plaintiffs demanded (1) damages; (2) attorneys' fees and costs; (3) recission; (4) restitution; (5) a temporary restraining order and preliminary and permanent injunctions prohibiting foreclosure, eviction, collection, and transfer of interest related to the residences of Plaintiffs and class members; (6) a declaratory judgment that Plaintiffs' rights were violated, that the class members notes have been rendered unsecured, and that class members' loans shall be delisted from the MERS system; (7) a quiet title order; and (8) pre-judgment interest.

In July 2011, Defendants moved to dismiss the CAC for failure to state a claim upon which relief could be granted (Doc. 1477; 1481). The Court granted the Motion to Dismiss with prejudice as to Plaintiff's claims (Doc. 1602 at 22). Plaintiff now seeks reconsideration of that Order.

**II.    LEGAL STANDARD**

Reconsideration is only appropriate if: (1) the court is presented with newly discovered, previously unavailable evidence; (2) the court committed a clear error of law and the initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah County, Or. v. AC and S, Inc.,* 5 F.3d 1255, 1262 (9th Cir. 1993); *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). The Court ordinarily will deny a motion for reconsideration absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to the Court's attention earlier with reasonable diligence. LRCiv 7.2(g). No motion for reconsideration may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order for which the party seeks reconsideration. *Id.* Repeating arguments in a motion to reconsider may be grounds for denying the motion. *Id.*

## III.  ANALYSIS

Plaintiff argues that the Court erred when it dismissed his claims alleging that Defendants violated Arizona Revised Statutes section 33-420. Plaintiff does not contend that there is newly discovered, previously unavailable evidence or that there has been an intervening change in controlling law. Rather, he disagrees with several of the Court's legal conclusions. *See* Doc. 1611 ("the Court materially misconstrued A.R.S. §33-420" and "gutted the statute's meaning.").

In its Order dismissing Plaintiff's Arizona Revised Statutes section 33-420 claims, the Court specifically found:

> To state a claim under A.R.S. § 33–420, Plaintiffs must allege that "[a] person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid . . ." A.R.S. § 33–420(A). Plaintiffs (specifically named plaintiffs Bilyea, DeBaggis, Molina–Hernandez, Rinehimer, Robinson, Silvas, and Stejic) allege Defendants caused to be recorded various assignments, substitution of trustees, notices of trustee's sales and trustee's deeds upon sale, which were false documents because they "contained false claims, or were otherwise invalid

- 4 -

based on MERS' status as making the assignments as 'beneficiary.'" Doc. 1424 at 24–25. Plaintiffs also allege that the assignments were "robosigned," that is, notarized in blank prior to being signed on behalf of MERS. *Id.* at 22. This claim fails for several reasons.

First, the alleged falsity in this claims arises from the fundamental argument that the MERS recordation process splits the note from the deed of trust and renders the note unenforceable. However, as discussed above, this Court does not find legal support for the proposition that the MERS system of securitization is so inherently defective so as to render every MERS deed of trust completely unenforceable and unassignable. In as much as this claim is based on this alleged falsity, it is dismissed with prejudice.

Second, the purportedly untrue recordations are not of the type covered by the statute. As explained by this Court, Arizona courts have interpreted § 33–420 to apply only to "some sort of document purporting to create an interest, lien, or encumbrance, such as a lis pendens, mechanics lien, or the deed of trust itself . . . The Court could locate no authority applying this statute to assignments of mortgages and notices of trustee's sales." *Schayes v. Orion Fin. Group, Inc.*, CV–10–2658–PHX–NVW, 2011 WL 3156303, at *6 (D.Ariz. July 27, 2011) (collecting cases); see also *In re Vasquez*, No. 4:08–BK–15510–EWH, 2010 WL 3084975, at *1 (Bankr.D.Ariz. Aug.5, 2010) ("In recording the Assignment, [defendant] was not purporting to claim an interest in the Plaintiff's property. A.R.S. § 33–420 simply does not apply to the facts here."). Thus, there can be no claim for a violation of A.R.S. § 33–420 and this claim will be dismissed.

Third, the allegations of robosigning do not state a claim for two reasons. In the first place, Plaintiffs have not pled sufficient facts that parties who are represented to have signed the MERS Assignments, "did not sign the document, and/or did not have the authority to sign the document, and/or did not have knowledge of the representation contained in the document." These legal conclusions are not supported by sufficient factual pleading. Yet, even if these allegations were well pled, Plaintiffs lack standing to challenge the validity of the MERS assignments. Even if an assignment were voidable, an action to declare an assignment void could only be brought by someone who can demonstrate a concrete and particularized injury in fact that is fairly traceable to the challenged assignment. No such injury is alleged. Thus, Plaintiffs, as third-party borrowers, are uninvolved and unaffected by the alleged Assignments, and do not possess standing to assert a claim based on such. *See Bridge v. Aames Cap. Corp.*, 2010 WL 3834059, at *3 (N.D.Ohio, Sept.29, 2010) ("Borrower certainly has an interest in avoiding foreclosure. But the validity of the assignments does not affect whether Borrower owes its obligations, but only to whom Borrower is obligated . . .).

> Fourth, this claim is time-barred. Even if the recordations actually damaged Plaintiffs, that damage would have accrued at the time of recordation. *See State v. Mabery Ranch, Co.*, 216 Ariz. 233, 165 P.3d 211, 227 (Ariz. Ct. App.2007). Yet, as alleged, all documents at issue were recorded in the public records more than one year before Plaintiffs initiated this Claim for Relief, Plaintiffs claim is also barred for this reason.

*In re Mortgage Elec. Registration Sys. (MERS) Litig.*, MDL Docket No. 09-2119-JAT, 2011 WL 4550189, at *4 -5 (D. Ariz. Oct. 3, 2011).

With regard to the Court's conclusion that the "purportedly untrue recordations are not of the type covered by the statute," Plaintiff argues that (1) the Court erred by relying on *Schayes* because it is factually distinguishable, and (2) the Court erred by ignoring the plain language of Arizona Revised Statutes section 33-420.

These arguments are nothing more than a re-argument of the facts previously presented to the Court in the opposition to the Motion to Dismiss, or new arguments that should have been presented at that time. Rule 59 motions cannot be used to ask the Court "to rethink what the court ha[s] already thought through," merely because a plaintiff disagrees with the Court's decision. *U.S. v. Bus. Recovery Servs., LLC*, No. CV 11-390-PHX-JAT, 2011 WL 4915192 (D. Ariz. Oct. 17, 2011) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D. Va. 1983)); *see Refrigeration Sales Co. v. Mitchell-Jackson, Inc.,* 605 F. Supp. 6, 8 (N.D. Ill. 1983). Such disagreements should be dealt with in the normal appellate process. *Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp.,* 825 F.Supp. 1216, 1220 (D.N.J. 1993); *Refrigeration Sales Co.*, 605 F.Supp. at 7.

With regard to the Court's conclusion that Plaintiff did not have standing to assert his section 33-420 claims, Plaintiff argues that the Court erred in concluding that Plaintiff was not "a class of 'owner' who can challenge a false recording against his property," within the meaning of section 33-420. (Doc. 1611 at 14). This argument not only asks the Court to rethink what it has already thought, but also misconstrues the Court's reasoning regarding Plaintiff's standing. The Court actually held:

> Even if an assignment were voidable, an action to declare an assignment void could only be brought by someone who can demonstrate a concrete and particularized injury in fact that is

- 6 -

> fairly traceable to the challenged assignment. No such injury is alleged. Thus, Plaintiffs, as third-party borrowers, are uninvolved and unaffected by the alleged Assignments, and do not possess standing to assert a claim based on such.

This did not suggest that a third-party borrower could never assert a claim under section 33-420, but merely acknowledged that Plaintiffs did not "demonstrate a concrete and particularized injury in fact that is fairly traceable" to the allegedly invalid assignments that were the subject of Plaintiff's claims in this case. Nothing in Plaintiff's Motion for Reconsideration convinces the Court that such reasoning and conclusion was "clear error."[1]

---

[1] Moreover, the Court has since reaffirmed and elaborated its reasoning in finding that third-party borrowers do not have standing with regard to claims mirroring Plaintiff's claims:

> The Court finds that Plaintiff has failed to state a claim upon which relief can be granted under section 33–420 because Plaintiff lacks standing to bring this action.
>
> . . .
>
> In this case, Plaintiff has failed to allege an injury that is fairly traceable to the challenged act of Defendant that can be fairly redressed through a favorable decision by this Court. Plaintiff alleges that someone forged the Assignment of the Deed of Trust assigning Defendant Chase's rights in the Deed of Trust to BOA. Plaintiff alleges that as a result of Defendant Chase's recording of this alleged forgery, he is entitled to a quiet title in his name against anyone claiming an interest in the property, an order declaring the assignment of the Deed of Trust invalid, an order setting aside the assignment against all persons who claim an interest in the property, and attorneys' fees and costs.
>
> Even if this Court were to declare the assignment invalid, this Court could not grant Plaintiff the relief he is seeking. Plaintiff alleges that, because of the recording of the alleged forged assignment, he is entitled to avoid foreclosure of the Property and is entitled to avoid any obligation he still owes on the promissory note. Plaintiff has failed to establish that his injury (foreclosure of the Property) is fairly traceable to the challenged act of Defendant (filing a document it allegedly knew to be forgery).
>
> Plaintiff executed a promissory note in favor of WaMu in the amount of one million eight hundred and twenty thousand

dollars. Plaintiff does not challenge that Defendant Chase, as successor in interest to WaMu, was entitled to assign its interest in the Property to a third party. The Assignment of the Deed of Trust purports to assign the Deed of Trust from Defendant Chase to BoA. If this assignment were fraudulent, Defendant Chase would be the party to have suffered an injury from such an assignment because *its* interest in the note would be compromised. Plaintiff's injury is not fairly traceable to Defendant's conduct and is not redresssable through the relief he seeks because, based on Plaintiff's default, Defendant Chase or its assigns were entitled to initiate foreclosure proceedings and notice a Trustee's Sale on the Property. The identity of the party who initiated these proceedings (whether Defendant Chase or BOA, its purported assignee) does not change Plaintiff's injury and thus, Plaintiff's injury cannot be traced to the alleged fraudulent transfer of the note.[FN3]

FN3. *See Russell v. OneWest Bank, FSB,* No. CV 11–01463–PHX–FJM, 2011 WL 5007958, at *3 (D.Ariz. Oct.20, 2011) (dismissing Plaintiff's claim based on an alleged violation of Arizona Revised Statutes section 33–420 because Plaintiff failed to establish standing when an assignment was allegedly forged because he defaulted on his note, and, thus was "neither involved with nor affected by the assignment and substitution."); *In re Mortgage Electronic Registration Systems (MERS) Litig.,* MDL Docket No. 09–2119–JAT, 2011 WL 4550189, at *5 (D.Ariz. Oct.3, 2011) (same).

If Plaintiff alleged that he was unable to determine which party he owed payments to based on a suspected fraudulent assignment of the note, he would have standing because Plaintiff's own rights would be affected and he would have suffered an injury in fact attributable to Defendant's alleged fraudulent conduct. However, Plaintiff does not make any such allegations. For example, Plaintiff does not allege that the assignment to BOA prevented him from making payments on his note or from determining the valid holder of his note, so that he could make such payments. Even if such facts were alleged, the Court could not properly grant Plaintiff the relief that he requests. Accordingly, Plaintiff has failed to plead that he suffered an injury in fact that is attributable to Defendant's alleged misconduct or is redressable by the relief he seeks in this

### IV. CONCLUSION

This case does not fall within one of those narrow instances where reconsideration is appropriate. The moving party must show more than a disagreement with the Court's decision; the Court should not grant a motion for reconsideration unless there is need to correct a clear error of law or prevent manifest injustice. *Database Am., Inc.*, 825 F.Supp. at 1220; *Refrigeration Sales Co., Inc.,* 605 F.Supp. at 7. Such is not the case here.[2] Plaintiff has failed to present this Court with cause to reconsider its October 3, 2011 Order granting Defendants' Motions to Dismiss.

Based on the foregoing,

**IT IS ORDERED** that Plaintiff Milan Stejic's Motion to Reconsider Dismissal of Stejic (Doc. 1611) is denied.

The Clerk of the Court shall file a copy of this Order in MDL 09-2119-PHX-JAT and CV 10-1547-PHX-JAT.

DATED this 20th day of March, 2012.

James A. Teilborg
United States District Judge

---

action. Accordingly, Plaintiff lacks standing to challenge the alleged violation of section 33–420.

*Henkels v. JP Morgan Chase Bank, Nat'l Ass'n*, No. CV 11-00299-PHX-JAT, 2012 WL 10380, at * 2-3 (D. Ariz. Jan. 3, 2012).

[2] The Court notes that, in his Reply, Plaintiff argues that the statute of limitations defense could not be an independent basis for dismissal because he filed his lawsuit in 2009 and none of the recording pre-dated that filing by a year. Even if the statute of limitations defense does not apply to Plaintiff's claims, Plaintiff has still failed to state a claim upon which relief can be granted.

- 9 -